JOINT POWERS ACT: CHARTER SCHOOLS: Charter schools formed as contemplated by Minn. Stat. § 120.064 (1992 and Supp. 1993) are not "governmental units" as the term is defined in the Joint Powers Act, Minn. Stat. § 471.59, subd. 1 (1992); consequently, such charter schools may not be a party to a joint powers agreement.

1007

March 11, 1994     (Cr. Ref. to 160 h and 160 c)

Thomas S. Deans, Esq.
Knutson, Flynn, Hetland. Deans & Olsen
Suite 1900
Minnesota World Trade Center
30 East Seventh Street
St. Paul, Minnesota 55101

Dear Mr. Deans:

In your letter to Attorney General Hubert H. Humphrey III you present substantially the following:

## FACTS

Independent School District No. 834 (Stillwater) is the sponsor of a charter school formed pursuant to Minn. Stat. § 120.064 (Supp. 1993). The charter school, referred to as New Heights School, is organized and operated as a nonprofit corporation under Minn. Stat. ch. 317A and provides an educational program as an outcome-based school as contemplated by section 120.064.

District No. 834 is a member of the Minnesota School District Liquid Asset Fund Plus (MSDLAF+), a Minnesota joint powers entity formed pursuant to Minn. Stat. § 471.59. New Heights School would like to become a member of the MSDLAF+.

You then ask substantially the following:

## QUESTION

Whether New Heights School is authorized under the provisions of Minn. Stat. § 471.59 to become a member of MSDLAF+?

## OPINION

In our opinion. New Heights School. as a charter school. is not authorized under Minn. Stat. § 471.59 (1992), the Joint Powers Act. to become a member of a joint powers organization because it is not a governmental unit as the term is used in the Act.

Under the Joint Powers Act. only governmental units may enter into agreements for the joint exercise of their powers. In pertinent part. subdivision 1 of section 471.59 provides that:

> The term "governmental unit" as used in this section includes every city, county, town. school district. other political subdivision of this or another state, another state. and any agency or the State of Minnesota or the United States, and includes any instrumentality of a governmental unit. For the purpose of this section. an instrumentality of a governmental unit means an instrumentality having independent policy making and appropriating authority.

To qualify as a "governmental unit" under subdivision 1, we conclude that such a unit must be a public entity. Except for the last term. "any instrumentality of a governmental unit," all of the preceding examples listed in subdivision 1 are clearly public entities. Although there may be instances in which an instrumentality of a governmental unit need not necessarily be a public entity, that is not the case under section 471.59.

*Ejusdem generis*. a rule of statutory construction. provides that "[a]s a general rule the words of a statute are to be construed with reference to the words with which they are associated, and when those used in a particular sense and having a specific meaning are followed by others of a general meaning. the latter are to be construed as applicable only to things of a like nature to those designated by the former." Sch. Dist. No. 30 v. Consolidated Sch. Dist. No. 30, 151 Minn. 52, 56-7, 185 N.W. 961, 963 (1921). "The principal underlying rule of *ejusdem generis* is that the legislature had in mind things of the same kind and was speaking of them as a class." State v. End, 232 Minn. 266, 272, 45 N.W.2d 378, 381 (1950). Since all of the preceding examples listed in subdivision 1 are public entities, it is reasonable to conclude that the term "any instrumentality of a governmental unit" includes

only public entities. Thus, although the term "governmental unit" as used in subdivision 1 is broad in its scope, it encompasses only public entities and does not include private entities. Compare Minn. Stat. § 471.16, subd. 1 (1992) which allows various public entities to "cooperate among themselves or with any nonprofit organization" to jointly operate recreational programs. (Emphasis added.)

A charter school is not a "governmental unit." Minn. Stat. § 120.064, subd. 4(a) (Supp. 1993) provides that a charter school "shall be organized and operated as a cooperative under chapter 308A or nonprofit corporation under chapter 317A." Minn. Stat. chs. 308A and 317A are two of the traditional options for the creation of private organizations and companies.[1] Nothing in either chapter suggests that organizing as either a cooperative or a nonprofit corporation would result in the formation of a governmental unit.

Similarly, nothing in Minn. Stat. § 120.064 establishes a charter school as a public entity or a governmental unit. Although a school district or, in some cases, the State Board of Education acts as the "sponsor" of a charter school, the charter school is thereafter generally organized. governed and operated as a private entity. Minn. Stat. § 120.064, subd. 4(a) (Supp. 1993). The relationship between the sponsor and the charter school is essentially contractual and the contract may be terminated. Minn. Stat. § 120.064, subds. 5 and 21 (Supp. 1993).

Charter schools are not generally subject to state laws affecting public education. Except as otherwise provided in section 120.064, a charter school is "exempt from all statutes and rules applicable to a school board or a school district . . . ." Minn. Stat. § 120.064, subd. 7 (1992) (emphasis added). While subdivision 7 enables a charter school to "elect to comply with one or more provisions of statutes or rules," that language only allows a charter

---

1. A school district. by contrast, is statutorily classified as a public corporation. Minn. Stat. § 122.02 (1992).

school to assume obligations: it does not empower a charter school to assume the authority of a school district nor does it alter the legal status of a charter school as a private entity. Id. (emphasis added). Subdivisions 8, 9 and 12 of section 120.064 (1992 and Supp. 1993) establish minimal statutory requirements which a charter school must meet to be eligible for public funding. Although the standards are similar or identical to some of those mandated of public schools,[2] nothing in these subdivisions transforms a charter school formed as a private, nonprofit corporation into a public or governmental body. Similarly, the eligibility for public funding does not alter the private nature of a charter school. Minn. Stat. § 124.248 (1992 and Supp. 1993) allows a charter school to qualify for certain state education aids "as though it were a school district." This language certainly suggests that a charter school is not a school district. Moreover, receipt of public funding for education is not limited to public schools. See, e.g., Minn. Stat. § 123.3514 (1992 and Supp. 1993) (private, post-secondary institutions eligible to receive public education funding under the Post-Secondary Enrollment Options Act); Minn. Stat. §§ 123.931-.947 (1992 and Supp. 1993) (public education aids for nonpublic school children); and Minn. Stat. § 126.23 (1992) (public education aid for private alternative education programs). The statutory language requiring that a charter school "must be nonsectarian" is language generally applied to private entities to be eligible for public education funding. See, e.g., Minn. Stat. § 123.3514, subd. 4 (1992)[3] and Minn. Stat. § 126.23 (1992).[4]

---

2.   For example, a charter school may not charge tuition and is required to comply with the Pupil Fair Dismissal Act.

3.   The Post-Secondary Enrollment Options Act permits enrollment only in nonsectarian courses.

4.   Among other prerequisites, an alternative program must be nonsectarian to qualify for public education aid.

For some other purposes, section 120.064 treats a charter school like a school district. For example, subdivision 8(h) (Supp. 1993) subjects a charter school to the same audit requirements as a school district and subdivision 8(i) (Supp. 1993) treats it as a school district for purposes of tort liability. These provisions, however, recognize the State's interest in protecting the public funding resources used to operate a charter school; they do not change the private nature of the nonprofit corporation. Subdivision 20 of section 120.064 makes a charter school's board of directors a public employer "for the purposes of chapter 179A." Subdivision 20 thereby establishes a procedure for the charter school and its employees to use to address labor relations issues: it does not transform the private nonprofit corporation into a governmental unit.

According to section 120.064, subdivision 11 (Supp. 1993), a charter school must employ teachers "who hold valid licenses to perform the particular service for which they are employed in the [charter] school." The requirement to employ licensed teachers does not, however, make a charter school a governmental unit. Part of Minnesota's Compulsory Attendance Law, Minn. Stat. § 120.101, subd. 7(1) (1992), includes the use of licensed teachers as an acceptable alternative for private schools to meet compulsory attendance standards. More importantly, nothing in section 120.064 provides charter school teachers with the statutory tenure and seniority protection generally afforded public school teachers in Minnesota. See, e.g., Minn. Stat. § 125.12 (Supp. 1993) (the continuing contract law); and § 125.17 (Supp. 1993) (the teacher tenure act for school districts in cities of the first class). In addition, unlike public school teachers generally, charter school teachers are not members of the Teachers Retirement Association (TRA). A charter school teacher, if on leave from a public school district to teach at the charter school, may elect to continue TRA membership under the procedures established in Minn. Stat. § 120.064, subd. 19 (1992) which provide that:

During a leave, the teacher may continue to aggregate benefits and credits in the teachers' retirement association account by paying both the employer and employee contributions based upon the annual salary of the teacher for the last full pay period before the leave began. The retirement association may impose reasonable requirements to efficiently administer this subdivision.

Note that the teacher's TRA contribution is based upon the salary when employed by the school district, not the salary received from the charter school.

In conclusion. charter schools are organized and operated as private cooperatives or private nonprofit corporations. Nothing contained in section 120.064 alters the private nature of charter schools or makes them governmental units for purposes of the Joint Powers Act.

Very truly yours,

HUBERT H. HUMPHREY III
Attorney General

CHARLES T. MOTTL
Assistant Attorney General